[No. 5422. Decided February 21, 1905.]

ROBERTSON MORTGAGE COMPANY, *Appellant*, v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY, *Respondent.*[1]

ESTOPPEL—STREET RAILWAYS—RIGHT OF WAY—ACQUIESCENCE. Where the owner of platted land agrees in writing to give a right of way across the same for a street railway in consideration of the benefits to be derived therefrom, the railway to be completed in one year on a line acceptable to him, and thereafter acquiesced in the construction of the railway and its use for seven years, he is estopped from asserting that he did not agree to the exact location, or from in any way questioning the right to use the same.

Appeal from a judgment of the superior court for King county, Bell, J., entered March 29, 1904, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, dismissing an action to compel payment for, or the vacation of, a railway right of way. Affirmed.

*G. W. Saulsberry,* for appellant.

*Peters & Powell,* for respondent.

[1]Reported in 79 Pac. 610.

CROW, J.—This is an action in equity, instituted by appellant, the Robertson Mortgage Company, a corporation, for the purpose of requiring the respondent, the Seattle, Renton & Southern Railway Company, a corporation, to condemn and pay for a strip of land occupied and used by it as a right of way, or to vacate the same in the event of its failure to condemn. Judgment of dismissal was entered, and this appeal is prosecuted.

The findings of fact made by the trial court fully state the cause, being in substance as follows:

"(1) That in the year of 1890 the plaintiff corporation was organized under the laws of the state of Washington by one W. B. Robertson and his son, and the said W. B. Robertson then and ever since has owned all the stock of said company, and controlled exclusively the selection of its trustees and officers and management of its property.

"(2) That at all the times hereinafter named the Seattle and Renton Railway Company was a corporation, organized under the laws of the state of Washington for constructing and operating railways, and the defendant, Seattle, Renton and Southern Railway Company, was thereafter organized under the laws of the state of Washington as a corporation with power to construct and operate railways, and before the commencement of this suit had acquired all the property rights and franchises of the Seattle and Renton Railway Company.

"(3) That on the 24th day of March, 1896, the defendant William B. Robertson was the owner of a large tract of land in King county, Washington, bordering on the shores of Lake Washington, and lying between Rainier Beach and the town of Renton, and about two and one-half miles from the former place measured along the lake shore, which said tract was known and platted as 'Bryn Mawr,' which plat was recorded in the auditor's office of King county, Washington, April 14th, 1890, the title to a portion of it standing in the name of the Robertson Mortgage Company, and the title to the balance of it standing in the name of W. B. Robertson, and the said Robertson individ-

ually, or through the Robertson Mortgage Company, has ever since been the owner of the following described portion of Bryn Mawr Park, to wit: Amongst others, blocks six, sixteen, eighteen, twenty-seven, twenty-eight, thirty-seven and thirty-eight, and that tract designated as 'Park' on the plat.

"(4) In the month of March, 1896, the Seattle and Renton Railway Company, being then the owner and operating an electric freight and passenger railway from the heart of the city of Seattle southerly to Rainier Beach, contemplated the extension of said railway line southerly from Rainier Beach to and across Bryn Mawr Park to the town of Renton, and then received from the said William B. Robertson an agreement in writing signed by him, dated March 24th, 1896, agreeing to give said railway company, its successors and assigns a right of way through said Bryn Mawr Park of fifteen (15) feet in width on either side of the center line of its track, to hold for so long as the same should be used for railway purposes; the location thereof to be subject to the approval of said Robertson, conditioned upon said road being constructed within one year; said agreement reciting as a condition the benefits to be derived by the said Robertson by the construction of said railroad.

"(5) Relying on this offer of right of way, the said railway company, between this date and about the middle of August, 1896, surveyed a line of road over and across said Bryn Mawr, and bought material and obtained other rights of way for the road from Rainier Beach to Renton, and perfected all its financial and other arrangements for the construction of the road from Rainier Beach to Renton across and over the above named tract; none of which it would have done but for the agreement of said Robertson and Robertson Mortgage Company to give it said right of way across these lands by reason of the fact that all other persons along the line of road interested therein were giving rights of way and subsidies, and by reason of the further fact that the business to be received by such a road did not justify its building except as an entire line to connect with the town of Renton, and the only feasible course

between its existing terminus at Rainier Beach and the town of Renton by reason of adverse grades back from the water front was through the lands at Bryn Mawr, substantially upon the line surveyed and afterwards built upon by the said company. That on several occasions during this time the said Robertson had gone upon the ground and had assented to the location of the line upon which the road was afterwards constructed and has since existed, and then only refused to give a formal deed conveying the right of way for the reason, as he stated, that there were certain equities outstanding in the property which made it unadvisable for him to make a formal deed.

"(6)   That the said railway company actually constructed its road as the same is now located over and across the lands named in the plaintiff's complaint,   .   .   . The said road was completed and in operation in the month of November, 1896, and has been in constant operation as a freight and passenger road ever since.

"(7)   That in or about the month of January, 1903, the Robertson Mortgage Company agreed to sell the lands in dispute herein, as well as a large part of said Bryn Mawr Park, to certain individuals for stated installment payments, who in or about the month of September, 1903, demanded of the Seattle, Renton and Southern Railway Company payment for the right of way occupied by its road over said lands; and with this exception there has been no objection or claim on.the part of any person against said railway company for the portion of said lands so occupied, or the value thereof, until two days prior to the commencement of this suit, although the said Robertson was at all times from March the 24th, 1896, a resident of the city of Seattle and well knew said road was being operated over and across said lands.

"(8)   That said Bryn Mawr Park is located five or six miles south of the city of Seattle, and without access of any kind to said city or to any other populous neighborhood except by a county road not less than half a mile distant from said lands on the west, and connected by old wood roads in poor repair, and by boat service on Lake Washington, except the access now furnished by said rail-

road, and the construction of said railroad has been of great benefit to said tract of land and enhanced the value thereof at least fourfold."

Exceptions having been taken to the findings of fact, appellant contends that they are not supported by the evidence. We have carefully examined all the evidence and are satisfied that it clearly sustains the findings made by the court. The only question, therefore, for this court to determine is, whether the final judgment entered by the trial court was correct and warranted by the facts as found.

Appellant contends that, at most, respondent has been holding possession of the right of way merely under a verbal license, which may be revoked by appellant at its pleasure, citing *Hathaway v. Yakima Water, Light, etc. Co.*, 14 Wash. 469, 44 Pac. 896, 53 Am. St. 874. With this contention we cannot agree. On March 24, 1896, before respondent extended its line of road, incurred any additional expense, or secured additional right of way, William B. Robertson, who then owned all the capital stock of appellant and controlled the appellant corporation, delivered to F. H. Osgood, manager of respondent, the following written instrument:

"Dear Sir: In consideration of the benefits to accrue to me by the building of an electric railway from Seattle to Renton, I agree to give you the use of a right of way for said railway over all the lands owned or controlled by me in what is known as Bryn Mawr Park, said right of way to be of a width of fifteen feet on each side of the center line of said railroad, the location of the same through said Bryn Mawr Park to be subject to my approval and acceptance, and said road to be in construction and operation within one year from date hereof; provided that whenever said right of way shall cease to be used for electric railway purposes, all uses or benefits hereby given shall then terminate. Yours truly, Wm. B. Robertson.
"Witness, C. M. Anderson."

After the execution and delivery of this instrument, respondent accepted the same and, relying upon its terms, proceeded to procure additional right of way for its line, incurred a large amount of additional expense and outlay, entered upon lands of appellant, and constructed and operated its line thereon with appellant's consent. Respondent now contends appellant is, and should be, estopped from interfering with its possession and use of said right of way. We think the contention of respondent should be sustained.

There is some conflict of evidence as to whether appellant actually agreed or assented to the exact line of the right of way as now occupied by respondent. The trial court, however, in its findings concluded that such agreement or assent had been made, and with this finding we are satisfied. It being true, therefore, that appellant has consented to the right of way now occupied by respondent, and respondent having accepted appellant's written agreement above set forth, and having entered into the possession of said right of way, after the execution of said agreement, with the consent and acquiescence of appellant, and appellant having failed to question such use or occupation for a period of more than seven years, appellant surely should be, and is now, estopped from questioning such use or occupation of said right of way, or from disturbing respondent's possession thereof.

There being no error, the judgment of the lower court is affirmed.

MOUNT, C. J., RUDKIN, ROOT, and DUNBAP JJ., concur.

HADLEY and FULLERTON, JJ., took no part.